THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY TOOLATE, Defendant-Appellant.

Fourth District No. 14011

Opinion filed May 31, 1977.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Robert C. Perry and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

On May 12, 1976, defendant Larry Toolate was convicted of burglary by an Adams County jury and was sentenced to 3 to 9 years' imprisonment.

Defendant, along with Michael Ruschmyer, was charged with burglary by Adams County information No. 75-CF-151 which was filed December 3, 1975. Information No. 75-CF-153 was then filed charging defendant alone with another burglary. On December 3, 1975, John T. Inghram IV was appointed counsel to represent defendant and Ruschmyer. At the February 9, 1976, arraignment, Mr. Inghram failed to appear, being engaged in another trial and the trial court suggested that the arraignment be continued until February 17, 1976.

On February 17, 1976, Mr. Inghram moved to withdraw as counsel for Larry Toolate, maintaining a conflict of interest arose over his representation of both defendants. The motion was allowed, and on that date, Andrew C. Schnack III was appointed to represent defendant. Mr. Inghram continued to represent Mr. Ruschmyer.

Defendant was then arraigned on February 24, 1976. He entered not guilty pleas as to both charges. At that point, the following colloquy ensued:

"THE COURT: Let the record show that each of these defendants in each cause have entered their plea of not guilty. Let the record show that each of these causes should be set for jury trial. Gentlemen, it would be my intention to set them on the May jury calendar.

MR. INGHRAM: I would prefer, on behalf of Mr. Rushmeyer, that it be set for May, your Honor.

THE COURT: Mr. Schnack?

MR. SCHNACK: Your Honor, I had some discussion with the State's Attorney and with Mr. Toolate. At the present time, the State's Attorney, I believe, has suggested March 8, as the trial date. I have talked with Mr. Inghram who was previously the attorney of record and he indicates to me that extensive discovery has been done and he is further willing to fill me in and help me out with any discovery that would be necessary. I have talked this over with Mr. Toolate. As far as I know, it is agreeable with him, however, I think I would like for him to indicate this into the record. As far as I am concerned, it would be somewhat an added burden, however, I feel I could be ready on March 8th's jury docket * * *.

THE COURT: May I suggest that if that is your wish and of the defendant, Toolate, that cause no. 75-CF-153 be set in March, rather than 75-CF-151 and it would be set in May. We wouldn't want to try both cases at the same time and that would facilitate.

MR. SCHNACK: That is true. Which residence is that?

THE COURT: Perry Livingston.

MR. INGHRAM: May we have just a moment your Honor?

THE COURT: Sure.

MR. SCHNACK: Your Honor, Mr. Inghram just informed me with regard to the burglary, cause no. 75-CF-153, there would be some more discovery that he hasn't yet done and therefore I doubt that we could be ready on that. However, again, I think on the 151, it would be Mr. Toolate's desire to go to trial on March 8.

THE COURT: That seems rather futile though. Why try that case twice?

MR. SCHNACK: I realize that, your Honor, however, I did want to bring this up and put it in the record.

THE COURT: I'll give you the opportunity to have 151, pardon me, 153 set for March 8, if that's your request * * *.

MR. SCHNACK: No, that's not my request.

THE COURT: Alright, then, both of these causes will be set for May and specifically your request for severance, which in effect is what it is, is denied. It seems a tremendous waste of money to sever these cases at this time and if Mr. Rushmeyer is not ready to go, he can't be compelled to go because the statute gives him 30 days from the time of arraignment. Anybody want to be heard in that regard?

MR. BIER: No.

THE COURT: Alright. The request for a setting for Mr. Toolate of 75-CF-151 for the March term is denied. Both causes are set for jury trial on May 10, 1976 at 10:00 * * *."

Next, on April 20, 1976, defendant filed a motion for discharge for lack of a speedy trial alleging he had been in custody continuously since December 3, 1975—more than 120 days. On April 29, the hearing was held on defendant's motion for discharge. After hearing arguments of counsel, the court denied defendant's motion finding that defendant had acquiesced in the continuance to the May docket setting and thereby was chargeable with the delay.

The case came to trial on May 12, 1976, and on the State's motion the trial of defendant was severed from that of Michael Ruschmyer. Testimony of police officers established that defendant was found in a Quincy, Illinois, tavern at 2:11 a.m. on December 3, 1975. The tavern had been closed at 11 p.m. and defendant was, according to the owner, without authority to be in the building. Defendant was found in the women's restroom along with a screwdriver and a crowbar. The cigarette machine had been pried off and the coin drawer was missing. Search of defendant revealed 102 quarters, 47 nickels, 17 dimes and 2 pennies in his jacket pocket. When other coins were taken from defendant's trousers, he allegedly said, "You gonna mix my coins with the rest of them?" Toolate's defense was based on the premise that his extreme drunkenness prevented him from forming the requisite intent to commit the crime. By their verdict, the jury impliedly rejected this theory as they found defendant guilty as charged.

The sole issue raised on appeal is whether the trial court erred in dismissing defendant's motion for discharge for lack of a speedy trial pursuant to section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 103—5). It is unquestioned that more than 120 days

had elapsed between defendant's incarceration and the filing of this motion. Thus, we must determine whether defendant was chargeable with any instances of delay which would have served to toll and begin again the 120-day period. The briefs raise three possible instances which arguably amount to delay chargeable to the defendant: (1) Mr. Inghram's motion, which was granted, to remove himself as defense counsel, (2) Mr. Inghram's failure to appear at the February 17 arraignment, and (3) defense counsel's rejection of the court's request to set the trial date for no. 75-CF-153 in March (within the 120-day period).

We need not discuss the first two situations since the third amounts to delay occasioned by the defendant and tolls the 120-day period.

Section 103—5 of the Code of Criminal Procedure provides in pertinent part as follows:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination of competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the' defendant's physical incapacity for trial, or by an interlocutory appeal.

＊ ＊ ＊

(e) If a person is simultaneously in custody upon more than one charge pending against him in the same county, or simultaneously demands trial upon more than one charge pending against him in the same county, he shall be tried, or adjudged guilty after waiver of trial, upon at least one such charge before expiration relative to any of such pending charges of the period prescribed by subparagraphs (a) and (b) of this Section. ＊ ＊ ＊" Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a),(e).

■■ We believe that the previously quoted exchange at the February 17 arraignment between the court and defense counsel Schnack indicates that Schnack was not prepared to try 75-CF-153 in March. The court offered to set one of defendant's cases for trial, albeit not the one defendant seemed to prefer, in March, prior to the expiration of the 120-day period. To hold that defendant was not chargeable with delay under these circumstances would be giving defendant an option to choose which charge to be tried on first. Nothing in the statute mandates such a result. On the contrary, a plain reading of section 103—5(e) is that the State need only bring defendant to trial on any one charge during the 120-day period when defendant is in custody on multiple charges. When the court said to defendant, "I'll give you the opportunity to have ＊ ＊ ＊ 153

set for March 8, if that's your request" and defense counsel declined the request allowing both cases to be set for May—this was a delay chargeable to the defendant. Schnack's statement with respect to setting 75-CF-153 in March that "there would be some more discovery that hasn't been done yet and therefore I doubt that we could be ready on that" is in the nature of a request for a continuance. To be sure, it amounts to an act with defendant's consent which caused or contributed to delay the trial on 75-CF-153 and prevents defendant from being entitled to discharge under the 120-day rule. *People v. Nunnery* (1973), 54 Ill. 2d 372, 297 N.E.2d 129.

Again, we express no opinion as to whether the substitution of attorneys or defense counsel's failure to appear at the February 17, 1976, arraignment were delays attributable to defendant which tolled the 120-day statute. We hold only that defendant's refusal to go to trial on 75-CF-153 in March, prior to the expiration of the 120-day period, constituted a delay occasioned by the defendant. For this reason, the trial court was correct in denying defendant's motion for discharge. The judgment of the circuit court of Adams County is affirmed.

Affirmed.

GREEN and TRAPP, JJ., concur.