NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210095-U

NOS. 4-21-0095, 4-21-0241 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 25, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| DONALD J. HAYES, | ) | Nos. 20CM392 |
| Defendant-Appellant. | ) | 20TR2756 |
| | ) | |
| | ) | Honorable |
| | ) | Charles D. Mockbee IV, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justice Holder White concurred in the judgment.
Justice Turner dissented.

**ORDER**

¶ 1     *Held*: (1) Defendant's statutory right to a speedy trial was not violated.

(2) Because no speedy-trial violation occurred, defendant's counsel was not ineffective for moving to dismiss some, but not all, of the charges against him on speedy-trial grounds.

¶ 2     Following a bench trial, defendant, Donald J. Hayes, was convicted of fleeing or attempting to elude a police officer (625 ILCS 5/11-204(a) (West 2018)), resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2018)), driving with a revoked license (625 ILCS 5/6-303(a) (West 2018)), and other traffic-related offenses. The trial court sentenced him to two concurrent terms of 364 days in jail. Defendant appeals, arguing the charges against him should have been dismissed on speedy-trial grounds. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4            On June 24, 2020, defendant was arrested and taken into custody. The following day, June 25, 2020, the State charged him in Vermilion County case No. 20-CM-392 with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2018)) (counts I and II), one count of fleeing or attempting to elude a police officer (625 ILCS 5/11-204(a) (West 2018)) (count III), and one count of resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2018)) (count IV). Defendant was also issued traffic citations for driving with a revoked license in Vermilion County case No. 20-TR-2756 (625 ILCS 5/6-303(a) (West 2018)), operating an uninsured motor vehicle in Vermilion County case No. 20-TR-2757 (*id.* § 3-707), driving on the wrong side of the road in Vermilion County case No. 20-TR-2758 (*id.* § 11-701), and disobeying a traffic control device in Vermilion County case No. 20-TR-2759 (*id.* § 11-305(a)). The charges were based on allegations that defendant was observed striking a woman at a gas station and, when a police officer attempted to conduct a traffic stop of defendant's vehicle, defendant fled the scene, resulting in a high-speed chase with the police.

¶ 5            The same day the charges against defendant were filed, he appeared before the trial court via video and was arraigned. After the trial court informed defendant of the charges against him and the possible penalties he faced, the following colloquy occurred:

            "[DEFENDANT]: What are they saying domestic battery for?

            THE COURT: Well, I'm just letting you know at this point what you've
      been charged with, we're gonna show a plea of not guilty for you. But at this time
      are you hiring your own attorney or are you asking for the Public Defender?"

Defendant asserted he was unemployed, and the court appointed the public defender to represent him. The court also set bond in the amount of $25,000 with 10% to apply and set the matters for a

pretrial hearing on August 4, 2020. Defendant did not post bond and remained in custody.

¶ 6    The record reflects defendant was on parole at the time of his arrest on the underlying charges. On June 25, 2020, the Illinois Department of Corrections (DOC) issued a parole-hold warrant for defendant, ordering that he "be retaken immediately into custody and be held for delivery to the Director of [DOC] or his duly authorized agent."

¶ 7    Additionally, at the time of defendant's arrest and the filing of charges against him, orders issued by the Illinois Supreme Court and the Fifth Judicial Circuit, which governed court functions in response to the COVID-19 pandemic, were in effect. In April 2020, the supreme court issued orders that allowed the chief judge of each judicial circuit to continue trials until further order of the supreme court and tolled speedy-trial time restrictions. See Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020); Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020). The same month, all jury trials in Vermilion County were continued until further order. 5th Judicial Cir. Ct. Adm. Order 2020-10 (Apr. 7, 2020). Jury trials were not permitted to resume until July 6, 2020. See Ill. S. Ct., M.R. 30370 (eff. May 20, 2020); 5th Judicial Cir. Ct. Adm. Order 2020-12 (May 29, 2020).

¶ 8    On July 8, 2020, defendant filed a motion for release on a recognizance bond or for a reduction of his bail. On August 4, 2020, the trial court conducted a hearing and reduced defendant's bond to $10,000 with 10% to apply. Defendant also raised an objection to any continuance in the case by the State and made an oral demand for a speedy trial. The court then set defendant's cases for a pretrial hearing on November 18, 2020. Again, defendant did not post bond and he remained in custody.

¶ 9    On October 27, 2020, defendant filed a motion to dismiss in his misdemeanor case based on a violation of his right to a speedy trial. He asserted the speedy-trial term applicable to him was 120 days as set forth in section 103-5(a) of the Code of Criminal Procedure of 1963 (725

ILCS 5/103-5(a) (West 2018)) (hereinafter speedy-trial statute). Defendant further alleged that since being arrested on June 24, 2020, he had "been in continuous custody for 125 days" and that he had not caused or contributed to any delay in having his case brought to trial. Defendant argued that both his constitutional and statutory rights to a speedy trial had been violated and asked the trial court to dismiss the charges against him with prejudice. Also on October 27, 2020, defendant filed a "Notice of Motion," stating his motion was set for hearing on November 6, 2020.

¶ 10 On November 6, 2020, the trial court conducted a hearing and defendant presented argument to the court consistent with his motion to dismiss. He asserted the applicable speedy-trial term of 120 days began to run on June 24, 2020, the day he was taken into custody, and that it ended just prior to the filing of his motion to dismiss. The State opposed defendant's motion on several bases. First, it argued the time period between June 24, 2020, and August 4, 2020, was a delay that should be attributable to defendant and not the State because defendant "did not object to the [August 4] court date." Second, the State argued that due to COVID-19 safety concerns, the courthouse was not "physically capable" of holding jury trials until August 10, 2020, and it noted jury trials were continued in other cases in August and September 2020 "for Covid reasons." Third, the State argued the speedy-trial term applicable to defendant was actually 160 days rather than 120 days because of the parole-hold warrant issued by DOC.

¶ 11 The trial court rejected the State's COVID-related argument, finding it unpersuasive. It stated it had not ruled at any point in defendant's particular case "that a trial could not happen due to Covid" and that it did not "adopt those determinations made in other files for every file." The court also found that the correct speedy-trial term was 120 days and that the exception regarding a parole hold did not apply in defendant's case. Ultimately, however, the court agreed that the time period between defendant's June 25, 2020, arraignment and his August 4,

2020, pretrial date was attributable to defendant. The court found defendant's "tacit agreement to a pretrial, not a trial, waive[ed] [a speedy-trial] demand." It concluded defendant's speedy-trial term did not begin to run until August 4, 2020, and that it did not end until December 2, 2020. The court then vacated defendant's November 18, 2020, pretrial setting and set the matter "for trial" on November 10, 2020.

¶ 12    On November 9, 2020, the State moved for a speedy-trial extension, asserting that despite exercising due diligence it had been unable to communicate with all of its witnesses in the case and secure critical testimony. It requested a 60-day extension of the speedy-trial term under section 103-5(c) of the speedy-trial statute (*id.* § 103-5(c)) and that a new trial date be set in January 2021. The following day, the trial court conducted a hearing and defendant's counsel raised objections to the State's motion. He also asserted defendant would waive his right to a jury trial and accept a bench trial to avoid further delay. The court found the State had exercised reasonable diligence and that an extension of the speedy-trial term was appropriate. However, it declined to extend the speedy-trial term for 60 days and, instead, set the matter for trial on December 8, 2020. Additionally, it stated that given its finding that the State reasonably was not prepared to move forward with a trial that day, it would not "hold [defense counsel] to a waiver of jury trial on behalf of [defendant]" and, if defendant wished to waive his right to a jury trial, the matter could be taken up on December 8.

¶ 13    Again, however, due to the COVID-19 pandemic, jury trials were suspended in Vermilion County from November 23, 2020, until February 1, 2021. See 5th Judicial Cir. Ct. Adm. Order 2020-24 (Nov. 30, 2020). On December 8, 2020, the trial court conducted a hearing and noted jury trials were not being conducted per the current administrative order. It ordered defendant released on a $10,000 recognizance bond. Defendant reasserted his speedy-trial demand

- 5 -

and his counsel suggested the matter be set for a bench trial on January 12, 2021. Defense counsel stated he would "consult with [defendant] to confirm that *** he'd be accepting a [b]ench [t]rial that day to avoid any further delay." The court rejected defense counsel's suggestion on the basis that a jury waiver needed to be "put *** on file." Over defendant's objection, the court then reset the matter for a jury trial on February 2, 2021. The same day, defendant filed a written demand for a speedy trial in his misdemeanor case. The record reflects that although defendant was released on bond on December 8, he remained in custody on the parole-hold warrant issued by DOC.

¶ 14    On January 21, 2021, defendant filed a written waiver of his right to a jury trial in both his misdemeanor and traffic cases. On January 26, 2021, he filed a second motion to dismiss in his misdemeanor case on speedy-trial grounds. He argued the administrative order suspending jury trials through January 2021 should not be held to apply in his case when he stated his desire to waive his right to a jury trial and proceed with a bench trial to avoid delay. Defendant also argued the trial court erred by granting the State's November 2020 motion for an extension of the speedy-trial term.

¶ 15    On January 29, 2021, a hearing was conducted on defendant's second motion to dismiss before a different trial judge. During the hearing, the trial court allowed the motion to be amended to reference defendant's traffic cases after defendant's counsel represented those cases were omitted due to "an oversight." Ultimately, the court denied defendant's motion. It found the previous judge "did follow the current orders that were in place at the time." Additionally, the court stated as follows: "I believe, *** the orders that are in place pursuant to the pandemic and the [a]dministrative [o]rders are what's important in this case and I believe if we look at those orders, *** that there has not been a violation of the [s]peedy[-t]rial [d]emand yet." At the conclusion of the hearing, defendant signed a jury waiver in open court.

¶ 16          On February 2, 2021, defendant's bench trial was conducted. The record reflects the trial court allowed the State's motion to withdraw both domestic battery counts (counts I and II) and that it found defendant guilty of all remaining offenses. Immediately following his trial, defendant filed a motion for a judgment of acquittal or a new trial. Relevant to this appeal, he argued the court erred by denying both of his motions to dismiss based on speedy-trial violations.

¶ 17          On February 5, 2021, the trial court denied defendant's posttrial motion and sentenced him to two, concurrent terms of 364 days in jail for fleeing or attempting to elude a police officer and resisting or obstructing a peace officer. It also imposed fines in connection with each of defendant's traffic citations.

¶ 18          Defendant filed notices of appeal in both his misdemeanor case (appeal No. 4-21-0095) and in case No. 20-TR-2756 (appeal No. 4-21-0241), in which he was convicted of driving on a revoked license. Defendant's appeals were consolidated for purposes of review.

¶ 19                              II. ANALYSIS

¶ 20          On appeal, defendant argues his right to a speedy trial—as set forth in section 103-5(a) of the speedy-trial statute (725 ILCS 5/103-5(a) (West 2018))—was violated because the State failed to bring him to trial within 120 days of his June 24, 2020, arrest. He argues the applicable 120-day, speedy-trial term expired "in late October 2020" and, thus, the trial court erred by denying his initial motion to dismiss the charges against him, filed in his misdemeanor case on October 27, 2020. Additionally, he contends his counsel provided ineffective assistance by moving to dismiss only his misdemeanor charges after 120 days had elapsed, rather than all of the pending charges against him.

¶ 21          In response, the State initially disputes that 120 days was the applicable speedy-trial term. It argues, instead, that because of the parole-hold warrant issued by DOC, it had to bring

defendant to trial within 160 days of a written trial demand under the Illinois intrastate detainers statute (Detainer Act) (730 ILCS 5/3-8-10 (West 2018)), which invokes the provisions of section 103-5(b) of the speedy-trial statute (725 ILCS 5/103-5(b) (West 2018)). Alternatively, it contends the 120-day speedy-trial term was not violated because (1) the supreme court "suspended" speedy-trial provisions due to COVID-19, (2) defendant caused delays in the underlying proceedings, and (3) the trial court granted it an extension of the speedy-trial term.

¶ 22        For the reasons that follow, we agree with defendant that the 120-day speedy-trial term set forth in subsection (a) of the speedy-trial statute applied. However, we disagree that the 120-day term was violated.

¶ 23                            A. Applicable Speedy Trial Term

¶ 24        "In Illinois, a defendant has both a constitutional and a statutory right to a speedy trial." *People v. Cordell*, 223 Ill. 2d 380, 385, 860 N.E.2d 323, 327 (2006). The relevant statutory provisions implement the constitutional right to a speedy trial, but the two are not coextensive. *Id.* at 385-86. In this appeal, defendant challenges only his statutory right.

¶ 25        Illinois has three principal statutes that address speedy-trial rights. *People v. Wooddell*, 219 Ill. 2d 166, 174, 847 N.E.2d 117, 122 (2006). First, section 103-5(a) of the speedy-trial statute provides that a defendant who is continuously held in custody for an offense must be brought to trial within 120 days, with the exception of delays occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2018). Specifically, that section states as follows:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by

making a written demand for trial or an oral demand for trial on the record. The provisions of this subsection (a) do not apply to a person on bail or recognizance for an offense but who is in custody for a violation of his or her parole, aftercare release, or mandatory supervised release for another offense.

The 120-day term must be one continuous period of incarceration. In computing the 120-day term, separate periods of incarceration may not be combined. If a defendant is taken into custody a second (or subsequent) time for the same offense, the term will begin again at day zero." *Id.*

"The 120-day speedy-trial period begins to run automatically if a defendant remains in custody pending trial." *People v. Phipps*, 238 Ill. 2d 54, 66, 933 N.E.2d 1186, 1193 (2010).

¶ 26 Second, section 103-5(b) of the speedy-trial statute applies to a defendant who has been released on bail or recognizance and it sets forth a 160-day speedy-trial term:

"(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant." 725 ILCS 5/103-5(b) (West 2018).

Under section 103-5(b), a defendant's demand for trial "shall be in writing." *Id.*

¶ 27 Third, the Detainer Act provides that section 103-5(b) of the speedy-trial statute "shall also apply to persons committed to any institution or facility or program of [DOC] who have untried complaints, charges or indictments pending in any county of this State." 730 ILCS 5/3-8-10 (West 2018). Its provisions "do not apply to persons no longer committed to a [DOC] facility or program" and, for purposes of the Detainer Act, "[a] person serving a period of parole or mandatory supervised release under [DOC's] supervision *** shall not be deemed to be committed to [DOC]." *Id.*

¶ 28     A determination of which speedy-trial provision applies involves matters of statutory interpretation. "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *Cordell*, 223 Ill. 2d at 389. "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.* Additionally, our supreme court has held that statutory speedy-trial provisions should be liberally construed in the defendant's favor. *People v. Mayo*, 198 Ill. 2d 530, 536, 764 N.E.2d 525, 529 (2002).

¶ 29     Here, defendant remained in custody in connection with the underlying offenses until December 8, 2020, when he was released on a recognizance bond. The plain language of subsection (a) of the speedy-trial statute states that it applies to individuals held "in custody." See 725 ILCS 5/103-5(a) (West 2018). Thus, subsection (a) of the speedy-trial statute was clearly applicable to defendant until December 8, 2020.

¶ 30     Subsection (a) also explicitly states as follows:

> "The provisions of this subsection (a) do not apply to a person on bail or recognizance for an offense but who is in custody for a violation of his or her parole, aftercare release, or mandatory supervised release for another offense." *Id.*

This language suggests that subsection (a) *does* apply to someone who remains in custody for a pending offense but who is also simultaneously "in custody" for a parole violation in another case. Had the legislature intended differently, it could have easily stated that subsection (a) did not apply anytime a person is otherwise "in custody" for a violation of parole, aftercare release, or mandatory supervised release in another case.

¶ 31     As stated, in this case, the record shows defendant was taken into custody in connection with his Vermilion County charges on June 24, 2020, and not released on bail or recognizance for the underlying offenses until December 8, 2020. Although he was also the subject

- 10 -

of a parole-hold warrant during that time, to the extent he could be viewed as being held in "simultaneous custody," as the State argues he was, subsection (a) would still apply and not the lengthier speedy-trial term set forth in the Detainer Act. Such an interpretation is consistent with the requirement that the speedy-trial statute be liberally construed in a defendant's favor. *Mayo*, 198 Ill. 2d at 536.

¶ 32 To support its contention that the Detainer Act Applies, the State relies heavily on this court's decision in *People v. King*, 366 Ill. App. 3d 552, 553-54, 852 N.E.2d 559, 560 (2006), a factually similar case where the defendant was both in custody on pending drug charges and the subject of a DOC parole-hold warrant for a prior offense. On review, this court framed the issue presented as "whether the [Detainer Act] applies to a defendant in jail on a DOC parole-hold warrant based on pending charges for which he is also in jail." *Id.* at 555. Ultimately, we determined the Detainer Act contained the applicable speedy-trial term, noting "DOC essentially had authority over [the] defendant no matter where he was held" and stating "the county jail was the equivalent of a DOC institution or facility under these circumstances." *Id.* at 557.

¶ 33 Significantly, however, *King* dealt with a prior version of the speedy-trial statute that did not contain the language that subsection (a) does "not apply to a person on bail or recognizance for an offense but who is in custody for a violation of his or her parole, aftercare release, or mandatory supervised release for another offense." 725 ILCS 5/103-5(a) (West 2018). As discussed, that language reflects a legislative intent that subsection (a) otherwise applies when a defendant remains in custody on the pending charges that are the subject of the speedy-trial claim.

¶ 34 Additionally, we note our decision in *King* was further based, in part, on a finding that a person remains in DOC's custody and "committed to DOC" even while serving a period of

- 11 -

parole or mandatory supervised release. *King*, 366 Ill. App. 3d at 556. However, subsequent to *King*, the Detainer Act was also amended to provide that "[a] person serving a period of parole or mandatory supervised release under the supervision of [DOC], for the purpose of this Section, shall not be deemed to be committed to the Department." 730 ILCS 5/3-8-10 (West 2018).

¶ 35 Although *King* is factually similar to the present case, we find its holding is inapplicable given the subsequent statutory amendments. The remaining cases relied upon by the State are factually distinguishable and do not warrant application of the Detainer Act to the circumstances of the present case. Accordingly, we hold the applicable speedy-trial term was the 120-day term set forth in subsection (a) of the speedy-trial statute.

¶ 36                                    B. Speedy-Trial Violation

¶ 37 As stated, on appeal, defendant argues his right to a speedy trial was violated because the State failed to bring him to trial within 120 days of his June 24, 2020, arrest. He disputes that any "delays" occurred during that time period that were attributable to him and, as a result, the trial court erred by denying his October 2020 motion to dismiss on speedy-trial grounds.

¶ 38 Under the speedy-trial statute, periods of "delay" occasioned by a defendant are excluded from speedy-trial term computations. 725 ILCS 5/103-5(f) (West 2018) ("Delay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried ***."). For purposes of section 103-5(a), a delay is "[a]ny action by either party or the trial court that moves the trial date outside of [the] 120-day window ***." *Cordell*, 223 Ill. 2d at 390. Further, nothing in section 103-5(a) indicates "that the 'delay' must be of a set trial date." *Id.*; see also *People v. Cross*, 2021 IL App (4th) 190114, ¶ 82, 184 N.E.3d 582 (describing a "delay" as "any action that slows down the criminal justice process and often— directly or indirectly—delays trial or the mere possibility of a trial"). Moreover, a defendant is

considered to have agreed to a delay unless he or she objects by making an oral or written demand for trial on the record. 725 ILCS 5/103-5(a) (West 2018).

¶ 39 A defendant who is not tried within the applicable speedy-trial period "must be released from custody and is entitled to have the charges dismissed." *People v. Hall*, 194 Ill. 2d 305, 327, 743 N.E.2d 521, 534 (2000); 725 ILCS 5/103-5(d) (West 2018). On appeal, two standards of review apply to speedy-trial issues. *People v. Pettis*, 2017 IL App (4th) 151006, ¶ 17, 83 N.E.3d 422. " 'The trial court's determination as to who is responsible for a delay of the trial is entitled to much deference, and should be sustained absent a clear showing that the trial court abused its discretion.' " *Id.* (quoting *People v. Kliner*, 185 Ill. 2d 81, 115, 705 N.E.2d 850, 869 (1998)). "However, the ultimate question as to whether [the] defendant's statutory right to a speedy trial has been violated is a question of law subject to *de novo* review." *Id.*

¶ 40 Here, defendant was taken into custody on the Vermilion County charges on June 24, 2020, and not released on a recognizance bond for those charges until December 8, 2020. He maintains that the 120-day, speedy-trial term automatically began to run on the day he was taken into custody and that it ended "in late October 2020," just prior to the filing of his initial motion to dismiss on speedy-trial grounds. We note 120 days from the date of defendant's arrest was October 22, 2020. See *People v. Ladd*, 185 Ill. 2d 602, 607-08, 708 N.E.2d 359, 361 (1999) (calculating a speedy-trial term " 'by excluding the first day and including the last' " per section 1.11 of the Statute on Statues (5 ILCS 70/1.11 (West 1996)).

¶ 41 In denying defendant's October 2020 motion to dismiss, the trial court found the 41-day period between defendant's June 25, 2020, arraignment and his August 4, 2020, pretrial hearing date constituted a delay attributable to defendant. The court reasoned that defendant implicitly agreed "to a pretrial, not a trial" by not raising any objection to its setting of the August

4 pretrial date. Thus, it concluded defendant's speedy-trial term did not begin to run until August 4, 2020, and that it would not end until December 2, 2020, well after the filing of defendant's October 2020 motion to dismiss.

¶ 42 Defendant argues the trial court erred in attributing the 41-day period following his arraignment to him. In part, he notes his arraignment was conducted one day after his arrest and that he appeared *pro se* before the court via video. Also, it was during that proceeding that counsel was appointed to represent defendant. However, even assuming that error occurred as defendant alleges, we find the 120-day speedy-trial term was properly tolled during two other relevant time periods, resulting in no speedy-trial violation. See *Beacham v. Walker*, 231 Ill. 2d 51, 61, 896 N.E.2d 327, 333 (2008) (stating that a reviewing "court may affirm the circuit court's judgment on any basis contained in the record").

¶ 43 First, as argued by the State, the record reflects speedy-trial terms were tolled in Vermilion County from before the date of defendant's arrest on June 24, 2020, to July 6, 2020. As noted, at the time of defendant's arrest in this case, orders governing court functions in response to the COVID-19 pandemic had been issued by both the supreme court and the Fifth Judicial Circuit. Specifically, on March 20, 2020, the supreme court entered an order that allowed the chief judges of each circuit to continue trials for a period of 60 days. Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). On April 3, 2020, it amended its order to provide that trials may be continued until further order of the court. Ill. S. Ct., M.R. 30370 (eff. Apr. 3, 2020). On April 7, 2020, it entered an order, which further stated as follows:

> "The Chief Judges of each circuit may continue trials until further order of this Court. The continuances occasioned by this Order serve the ends of justice and outweigh the best interests of the public and defendants in a speedy trial. Therefore,

such continuances shall be excluded from speedy trial computations contained in [the speedy-trial statute] ***. Statutory time restrictions in [the speedy-trial statute] *** shall be tolled until further order of this Court." Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020).

¶ 44    Also in April 2020, all jury trials in Vermilion County were continued until further court order. 5th Judicial Cir. Ct. Adm. Order 2020-10 (Apr. 7, 2020). Jury trials were not permitted to resume until July 6, 2020. See Ill. S. Ct., M.R. 30370 (eff. May 20, 2020); 5th Judicial Cir. Ct. Adm. Order 2020-12 (May 29, 2020).

¶ 45    Thus, from the date of defendant's arrest on June 24, 2020, and until July 6, 2020, no jury trials were being conducted in Vermilion County. Per the supreme court, the general continuance of those trials tolled the speedy trial term. See *People v. Mayfield*, 2021 IL App (2d) 200603, ¶ 16 ("Under the authority of the supreme court order, that general continuance tolled the speedy-trial term."). Given the orders in effect at the outset of defendant's case, we agree with the State's assertion that defendant's speedy-trial term could not begin to run until July 6, 2020.

¶ 46    Second, we also agree with the State that defendant's speedy-trial term was tolled from October 27, 2020, when defendant filed his first motion to dismiss on speedy-trial grounds, to November 6, 2020, when the trial court ruled on that motion. We note that 120 days from July 6, 2020, was November 3, 2020. Thus, defendant's motion to dismiss, filed on October 27, 2020, was premature.

¶ 47    "A delay occasioned by motions by a defendant is ordinarily chargeable to the defendant." *People v. Jones*, 104 Ill. 2d 268, 277, 472 N.E.2d 455, 459 (1984); see also *People v. Paulsgrove*, 178 Ill. App. 3d 1073, 1077, 534 N.E.2d 131, 133 (1988) ("When a defendant files a pre-trial motion, he is responsible for the time naturally associated with processing the motion.").

- 15 -

"Any type of motion filed by defendant which eliminates the possibility that the case could immediately be set for a trial also constitutes an affirmative act of delay attributable to defendant." *People v. Lilly*, 2016 IL App (3d) 140286, ¶ 31, 53 N.E.3d 1028.

¶ 48      When determining whether to attribute time associated with a motion for discharge to the defendant, a court should "look at the facts and circumstances of each case." *People v. Andrade*, 279 Ill. App. 3d 292, 300, 664 N.E.2d 256, 262 (1996) (stating "it is not practical to automatically charge the State for all time connected with [the] defendant's motion to discharge" nor is such time "always attributable to the defendant"). Factors to consider include "the timeliness of the motion, the complexity of the motion, whether the facts necessary to decide the motion are readily available, and the length of the continuance." *Id.*

¶ 49      In *Ladd*, 185 Ill. 2d at 610, the defendant filed a motion for discharge on speedy-trial grounds on August 14, and a hearing on the motion was conducted the following day. At the hearing, the trial judge granted the defendant until August 25 to submit case authority in support of his motion. *Id.* On September 15, the judge ruled on the motion, denying it. *Id.*

¶ 50      On review, the supreme court determined the defendant's motion for discharge was premature because it was "filed less than 120 days following the time the defendant was placed in custody, after deducting [periods of delay attributable to the defense]." *Id.* However, it stated that "[b]y the time the trial judge ruled on the motion, the defendant had been in custody longer than 120 days." *Id.* As a result, the court had to "determine what portions, if any, of the period after the speedy-trial motion was filed may be included or excluded from the speedy-trial clock." *Id.* In doing so, it rejected the defendant's contention "that time involved in the resolution of a speedy-trial motion may never be attributed to the defense." *Id.* at 611. Instead, the court found at least a portion of the time required to dispose of the defendant's motion was attributable to him,

- 16 -

specifically from August 14, the date the defendant filed his motion, to August 25, the date by which he was permitted to submit additional case authority in support of his contentions. *Id.* at 612-13. The court agreed that after August 25, the defendant in that case "did nothing to actually delay trial" and, instead, "sought immediate discharge and awaited decision." (Internal quotation marks omitted.) *Id.* at 613.

¶ 51        Here, like in *Ladd*, defendant's motion, seeking discharge on speedy-trial grounds, was premature because it was filed less than 120 days after July 6, 2020, when his speedy-trial clock began to run. Also similar to *Ladd*, the speedy-trial clock expired prior to when the trial court ruled on defendant's motion. Here, however, we find the entire 10-day period that it took the trial court to process defendant's motion is attributable to him. We note defendant filed his motion on October 27, 2020, and the same day, noticed his motion for hearing on November 6, 2020. The trial court heard arguments on the motion on November 6 and issued its ruling that day. Under the facts presented, defendant's motion eliminated the possibility that his case could be set for trial.

¶ 52        Further, although the record does not reflect defendant's rationale for choosing the November 6 hearing date, we note that when seeking discharge, it is the defendant who "bears the burden of showing that his right to a speedy trial has been violated." (Internal quotation marks omitted.). *People v. Patterson*, 392 Ill. App. 3d 461, 467, 912 N.E.2d 244, 250 (2009). "This burden includes a demonstration that he caused no delay, which fact must be affirmatively established by the record." (Internal quotation marks omitted.). *Id.* Here, the record suggests defendant was the sole party responsible for the time it took to dispose of the motion seeking discharge.

¶ 53        Taking into consideration that defendant's 120-day speedy-trial term did not begin to run until July 6, 2020, and that it was tolled by the 10 days it took to dispose of his speedy-trial

- 17 -

motion, we find that the 120-day term did not end until November 13, 2020. Prior to that date, the trial court granted the State an extension of the speedy-trial term. See 725 ILCS 5/103-5(c) (West 2018) ("If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days.").

¶ 54 Notably, defendant appeals only the trial court's denial of his October 2020 motion to dismiss, and he does not raise any challenge to the remaining time period in which he was brought to trial. Based on the arguments presented, we find no speedy-trial violation. Further, because no speedy-trial violation occurred, defendant's counsel cannot have been ineffective for failing to also raise such a claim in connection with defendant's traffic-related offenses. See *People v. Staake*, 2017 IL 121755, ¶ 47, 102 N.E.3d 217 ("Counsel's failure to assert a speedy-trial violation cannot establish either prong of an ineffective assistance claim if no speedy-trial violation occurred.").

¶ 55                                III. CONCLUSION

¶ 56 For the reasons stated, we affirm the trial court's judgment.

¶ 57 Affirmed.

¶ 58 JUSTICE TURNER, dissenting:

¶ 59 I respectfully dissent because I disagree with the majority's conclusion defendant's speedy-trial term was tolled from October 27, 2020, when defendant filed his first motion to dismiss on speedy-trial grounds, to November 6, 2020, when the trial court ruled on that motion. I interpret the supreme court's decision in *Ladd* differently than the majority.

¶ 60 Paragraph 47 of the majority order begins with the general premise a delay caused

- 18 -

by a defendant's pretrial motion is normally chargeable to the defendant. *Supra* ¶ 47. Later, in paragraph 52 (*supra* ¶ 52), it cites *Patterson* where the reviewing court found the defendant's failure to appear waived his speedy-trial demand. *Patterson*, 392 Ill. App. 3d at 462. Also, waiver aside, the *Patterson* court found the defendant caused delay by both misrepresenting his term of incarceration and failing to notify the court of his change of address. *Patterson*, 392 Ill. App. 3d at 467-68. However, the supreme court in *Ladd* specifically addressed how "delay" occasioned by the resolution of a motion to discharge for violating the speedy-trial statute is treated differently from delays caused by other pretrial motions and other actions by the defendant.

¶ 61        Prior to *Ladd*, the supreme court in two separate decisions indicated the time in which a motion seeking discharge for a speedy-trial violation is pending is not attributable to the defense. See *People v. Tamborski*, 415 Ill. 466, 473, 114 N.E.2d 649, 653 (1953), and *People v. Moriarity*, 33 Ill. 2d 606, 611, 213 N.E.2d 516, 519 (1966). However, the circumstances in *Ladd* led the court to recognize a rigid rule precluding a court from ever assigning delay to the defense was inappropriate. *Ladd*, 185 Ill. 2d at 611-12.

¶ 62        In *Ladd*, 185 Ill. 2d at 605-06, the defendant filed his discharge motion on August 14, 1995, and the motion was heard the next day. At the August 15, 1995, hearing, the defense counsel requested a 10-day continuance to respond to the State's authorities, and the trial court ultimately ruled on the discharge motion on September 15, 1995. *Ladd*, 185 Ill. 2d at 606. The supreme court stated, "We do not agree with the defendant that time involved in the resolution of a speedy-trial motion may *never* be attributed to the defense." (Emphasis added.) *Ladd*, 185 Ill. 2d at 611. The supreme court charged defendant with the 10-day delay from August 15 to August 25 because it was requested by defense counsel. *Ladd*, 185 Ill. 2d at 612. However, the supreme court rejected the State's argument that all the time used to dispose of the discharge motion must be

- 19 -

charged to the defendant, and it did not attribute any delay to the defendant for the entire period following the 10-day continuance. *Ladd*, 185 Ill. 2d at 612-13.

¶ 63 Thus, starting from the premise no delay is normally attributed to defendant in dispensing with a discharge motion, I would not find the time ensued by the resolution of defendant's October 27, 2020, motion as delay caused by defendant. In my view, this case is readily distinguishable from *Ladd* because defendant did not request a continuance. Instead, defendant sought immediate discharge, and the " 'only conceivable act of delay was the tender of the question for decision.' " See *Ladd*, 185 Ill. 2d at 613 (quoting *People v. Ladd*, 294 Ill. App. 3d 928, 938, 691 N.E.2d 896, 905 (1998)). Our record contains no evidence defendant caused any delay in the hearing of or ruling on his motion to dismiss. Without evidence defendant set the hearing on his motion to dismiss for a date that was not the court's first available date, I do not agree this court should find the period between the time defendant's motion was filed and the date it was heard as delay caused by defendant. In *Tamborski*, 415 Ill. at 473, the supreme court found the defendant's motion for discharge based on speedy-trial grounds did not seek to delay the defendant's trial but, instead, sought discharge. The court further found the fact the trial court did not immediately hear the defendant's motion and later took the motion under advisement does not tend to show the trial court was delayed by any act on the defendant's part. *Tamborski*, 415 Ill. at 473. Moreover, even if the November 6 hearing date on the speedy-trial motion was not the first available hearing date, the hearing date was before the scheduled November 18 pretrial hearing, and thus did not delay defendant's trial. See *People v. Bonds*, 401 Ill. App. 3d 668, 676, 930 N.E.2d 437, 446 (2010) (rejecting the State's argument the time required to address the defendant's motion to discharge was a delay attributable to the defendant where the defendant's motion filed six days before trial did not seek to delay the trial date).

¶ 64        Since I have concluded the speedy-trial period should not have been tolled from October 27, 2020, to November 6, 2020, I would find defendant was entitled to discharge due to a speedy-trial violation. Thus, I would reverse his convictions for fleeing or attempting to elude a peace officer and resisting or obstructing a peace officer. Additionally, given the State does not address the contention in defendant's ineffective assistance of counsel claim that the same speedy-trial analysis would apply to defendant's traffic offenses, I would also reverse those convictions, which include the conviction for driving with a revoked license. See *People v. Boyd*, 363 Ill. App. 3d 1027, 1039, 845 N.E.2d 921, 932 (2006) (reversing the defendant's convictions where defense counsel rendered ineffective assistance by failing to seek discharge based on a speedy-trial violation).